"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DIAGNOSTIC SYSTEMS CORP., | Case No. SACV 06-1211 DOC (ANx) consolidated with |
| Plaintiff, | Case No. SACV 07-960 DOC (ANx) |
| v. | MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MICROSTRATEGY'S MOTION TO COMPEL MORE DEFINITE STATEMENT FROM PLAINTIFF DIAGNOSTIC SYSTEMS CORP. |
| SYMANTEC CORP., et al., | |
| Defendants. | |
| AND RELATED COUNTER-CLAIMS | (dkt no. 606) |

Having read and considered the parties' respective papers relating to the Motion, the Court found this matter was appropriate for disposition without a hearing. *See* Rule[1] 78; Local Rule 7-15. Therefore, the previously stipulated hearing date of May 21, 2009, was vacated and the Clerk telephonically notified the parties that no appearances would be required.

///

///

///

---

[1] Unless noted otherwise, Rule shall refer to the Federal Rules of Civil Procedure.

1    **1.    The Parties' Contentions**

2         Pursuant to Rules 26(e)(1)(A) and 37, as well as Local Rules 37-1 through 37-4,

3    MicroStrategy moves for an order compelling Diagnostic Systems Corp. ("DSC") to provide

4    a more definite infringement statement.  (Motion at 3[2]:5-11.)  MicroStrategy's moving

5    contentions, which are set forth in the accompanying Joint Stipulation (dkt. #607) ("JS"),

6    principally establish that MicroStrategy contends the claim charts in DSC's Preliminary

7    Infringement Contentions ("PICs") for claims 1, 2, 4, 5, 6, and 8[3] of DSC's '590 Patent fail

8    to set forth its theory of infringement with the requisite specificity even though DSC has been

9    reviewing the source code for MicroStrategy's eight accused software products since June

10   2008 -- nearly one full year -- and has had executable copies and operating manuals for the

11   accused products for about the same time.  The alleged deficiencies with DSC's PICs are

12   identified at pages 11 through 14 of the JS.  DSC served its PICs on April 4, 2008, and DSC

13   expressly represented the PICs would be updated with additional information after DSC

14   reviewed the source code for MicroStrategy's accused software products.  (JS at 10:1-11:9.)

15   MicroStrategy further proffers that, in responding to an interrogatory that requests DSC to

16   provide a detailed factual basis for its infringement claims (interrogatory no. 3), DSC referred

17   to its PICs and further represented that it would supplement the claim charts for its PICs

18   "following MicroStrategy's production of source code and following a reasonable period of

19   time to review MicroStrategy's source code."  (JS at 7:16-9:16.)  MicroStrategy contends

20   DSC has had more than a reasonable period of time to provide proper supplemental PICs, that

21   DSC's failure to do so is inexcusable and violates a party's duty to supplement its Rule 26(a)

22

23

24   [2]   The pages of the Motion are not sequentially numbered from the cover page as required by Local Rules 11-3.3 and 11-5.2. Instead, the cover page 1 is numbered page i and the third page is numbered page 1. The Court cites to the actual third page, which is also page 3 as supplied by the Court's CM/EFC electronic pagination system.

25

26   [3]   On May 7, 2009, MicroStrategy e-filed its supplemental memorandum (dkt. #656) in support of its pending Motion and reported that, the day before the supplemental memorandum was e-filed, DSC cured the deficiencies with claim 8 by withdrawing its claim of infringement as to that claim. (Supp. Mem. at 2:3-6.) Accordingly, the Court finds the dispute as to claim 8 is moot.

27

28

Page 2

1   disclosures, and that DSC should now be compelled to supplement its PICs with a relatively

2   complete theory of infringement that identifies the infringing source code for each of its

3   accused software products, where pertinent, as well as other detailed information, and that it

4   should also be awarded its attorneys fees and costs in bringing its motion.

5        DSC opposes the Motion, principally contending that: (1) although its consulting

6   expert has spent hundreds of hours diligently reviewing MicroStrategy's source code, the

7   review has not been easy and hampered by alleged spyware; (2) MicroStrategy's Motion

8   inappropriately attempts to invade the work-product privilege that protects DSC's consulting

9   experts's opinions; on March 27, 2009, DSC served MicroStrategy with a supplemental

10  answer to interrogatory no. 3 that incorporates its original PICs and provides updated claim

11  charts addressing all of the so-called deficiencies with its original PICs ("updated PICs"); and

12  (3) DSC would further supplement its PICs after it is allowed to take MicroStrategy's Rule

13  30(b)(6) deposition so DSC and its experts could formulate their positions. (JS at 16:1-23:5;

14  DSC's Supp. Memo. (dkt. #664) at 1:1-28.)  DSC asserts MicroStrategy's Motion should be

15  denied and that it should be awarded its attorneys fees and costs.

16  **2.    Relevant Background**

17       On July 23, 2007, the Court held its first Rule 26(f) scheduling conference in this case

18  for the defendants served with DSC's original complaint.  (7/23/07 Minute Order (dkt.

19  #103).)  MicroStrategy did not participate since it was not named as a co-defendant in DSC's

20  original complaint. Nonetheless, during the initial 7/23/07 Rule 26(f) conference held on July

21  23, 2007, Judge Carter made some rulings that apply throughout these consolidated cases.

22  One such ruling was to deny a request to adopt all of the Northern District of California's

23  Local Patent Rules.  Instead, Judge Carter chose a more focused approach to "rule as we

24  go[,]" adopting only the specific local patent rules -- or the principles embodied by those rules

25  -- based upon a perceived need.  (7/23/07 Reporter's Transcript at 41:5-11.)  Towards that

26

27

28

1  end, and consistent with the spirit of Local Patent Rule 3-1,[4] Judge Carter issued a scheduling

2  conference order that directed DSC to serve its PICs on the defendants that had been served

3  with DSC's original complaint. (7/23/07 Minute Order.)  In doing so, Judge Carter expressly

4  ordered DSC to provide "definitive" claim charts for all accused "infringing devices . . . right

5  off the bat," without any discovery or the benefit of source codes, so that DSC could not open

6  "Pandora's box" and then decid[e] what [it would] file against a "universe" of products,

7  thereby "letting the mouse drive the elephant." (7/23/07 Reporter's Transcript at 46:4-23.)

8        On November 8, 2007, DSC filed its consolidated first amended complaint ("FAC")

9  (dkt. #224) that named MicroStrategy and other entities as co-defendants.  On November 12,

10  2007, MicroStrategy was served with the FAC.  (12/05/07 Proof of Service (dkt. #257).)  The

11  record does not indicate that a Rule 26(f) conference was held after MicroStrategy was served

12  or that a Rule 26(f) order directing DSC to serve PICs on MicroStrategy was ever issued.

13  However, consistent with Judge Carter's 7/23/07 Scheduling Order directing DSC to serve

14  PICs on the defendants named in the original complaint, DSC undeniably served PICs upon

15  MicroStrategy on April 4, 2008.  On March 27, 2009, DSC served a supplemental answer to

16  interrogatory no. 3 that incorporates the updated PICs as part of its answer.  (Plaintiff's

17  supplemental and/or amended objections and responses to MicroStrategy's interrogatories

18  (dkt. #657-2 at 8, #657-3 at 1-22, #657-3 at 1-22, #657-4 at 1-23).)

19        DSC is a wholly-owned subsidiary of Acacia Research Corporation ("Acacia"), and

20  both entities are in the business of acquiring, licensing, and enforcing patented technologies.

21

22

23      [4]    At the time of the first scheduling conference, Local Patent Rule 3-1 "require[d] plaintiffs in patent infringement actions to serve 'Preliminary Infringement Contentions'

24  ("PICs") that include, among other things, '[a] chart identifying specifically where each element of each asserted claim is found with each Accused Instrumentality.'" *Townshend Intellectual Property, L.L.C. v. Broadcom Corp.*, 2007 WL 1994158, *1 (N.D. Cal., filed July

25  5, 2007).  On March 1, 2008, the Northern District amended Local Rule 3-1.  Local Patent Rule 3-1 has not been formally adopted in this judicial district.  However, Rule 83(b)

26  expressly provides, in relevant part, that "[a] judge may regulate practice in any manner consistent with federal law. . . ."  In the Ninth Circuit, a district courts' local rules constitute

27  "laws of the United States" if "'not inconsistent' with the Federal Rules of Civil Procedure." *Marshall v. Gates*, 44 F.3d 722, 724 (9th Cir. 1995).

28

1 "DSC's only business is to analyze, investigate, and attempt to enforce the patents-in-suit[;...]
2 DSC does not make any products and the patents are its only assets." (8/12/08 Order (dkt. #
3 558) at 3:16-18; 9:6-15.)

4 **3.    Analysis**

5 Rule 26(e)(1) states: "[a] party who has made a disclosure under Rule 26(a) -- or who
6 has responded to an interrogatory, request for production, or request for admission -- must
7 supplement or correct its disclosure or response:  (A) in a timely manner if the party learns
8 that in some material respect the disclosure or response is incomplete or incorrect, and if the
9 additional or corrective information has not otherwise been made known to the other parties
10 during the discovery process or in writing; or (B) as ordered by the court."  The Ninth Circuit
11 recently explained:

12 Rule 26(e)(1)(A) requires disclosing parties to supplement their prior
13 disclosures "in a timely manner" when the prior response is "incomplete or
14 incorrect." Rule 37(c)(1) gives teeth to these requirements by forbidding the use
15 at trial of any information required to be disclosed by Rule 26(a) that is not
16 properly disclosed.

17 *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).

18 In relevant part, Rule 37(c)(1) further provides "[i]f a party fails to provide information
19 . . . required by Rule 26(a) or 26(e), the party is not allowed to use that information . . . to
20 supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially
21 justified or is harmless."  "The Advisory Committee Notes describe [Rule 37(c)(1)] as a
22 "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of
23 material. . . ." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.
24 2001) (citing Rule 37 advisory committee's note (1993)).  Accordingly, the party facing Rule
25 37(c)(1)'s self-executing sanction has the burden of proving the failure to comply with Rule
26 26(a) or (e) was substantially justified or harmless. *See Yeti by Molly, Ltd.*, 259 F.3d at 1107
27 (finding Rule 37(c)(1) implicitly imposes the burden on party facing sanctions to prove
28 harmlessness and indicating the same is true for substantial justification.)

1    Generally, "the burden is always on the patentee to show infringement." *Under Sea*
2    *Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987).   Consequently, Rule
3    37(c)(1)'s self-executing sanctions are particularly useful in patent software infringement
4    cases where, as here, a defendant takes the initiative to better evaluate its defenses by
5    providing its source code to the plaintiff for the purpose of obtaining PICs that clearly
6    describe how the defendant's code allegedly infringes upon claims of the patents-in-suit.
7    Further, the Northern District of California recently cautioned in *Townshend* that:

8        Despite the label "preliminary," PICs are not intended to be mere rough drafts
9        subject to drastic modification.  Rather, the rules "are designed to require parties
10       to crystallize their theories of the case early in the litigation and to adhere to
11       those theories once they have been disclosed." *Integrated Circuit Systems, Inc.*
12       *v. Realtek Semiconductor Co., Ltd.*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal.
13       2004). Indeed, the default presumption is that a party's PICs "shall be deemed
14       to be that party's final contentions."   Rule 3-6.   Although the Rules permit
15       amendments if made necessary in light of documents produced by the other side
16       or by the claim construction ruling, or upon a showing of other good cause,
17       those provisions do not contemplate pre-planned, wholesale revisions of the
18       nature [Plaintiff] appears to be suggesting it may elect to make here.[]

19   *Townshend* at *3 (note 3 omitted at "[]").  In *Townshend*, the plaintiff served PICs that were
20   lengthy and contained substantial detail but did not map the defendant's source code to the
21   asserted claims of the patents-in-suit.  *Id.* at 2.  To enable the parties to move efficiently
22   toward claim construction and the eventual resolution of their dispute, the defendant
23   voluntarily produced its source code and requested the plaintiff to either serve amended PICs
24   that mapped the asserted claims of the subject patents to the defendant's accused products or
25   answer an interrogatory seeking the same information. *Id*. at *1-2. The plaintiff acknowledged
26   that it could comply with the defendant's request but refused, arguing it should be allowed
27   to do so after a *Markman* hearing so the disclosure of the results of that analysis could be
28   made in its Final Infringement Contentions.  *Id.* The defendant responded by bringing a

1    motion to compel the plaintiff to provide amended PICs or a supplemental interrogatory

2    response, which the district court granted. *Id.* at \*3.

3         The Court has reviewed DSC's updated PICs that it attached as part of its supplemental

4    response to interrogatory no. 3.  Like its original PICs, the updated PICs fail to identify how

5    the source code for any of MicroStrategy's accused software products infringe upon specific

6    claims of DSC's '590 Patent.  Also, the claim charts for the updated PICs: (1) fail to identify

7    and describe what, if any, source code for MicroStrategy's accused software products infringe

8    upon claims 1, 2, 4, 5, and 6 of DSC's '590 Patent; (2) fail to identify and describe, in a clear

9    and consistent manner, what, if any, of MicroStrategy's specific accused software product or

10   products constitute an accused "first program" and accused "second program" and, with

11   respect to each accused software product, DSC fails to identify how each accused product's

12   functionality contributes to infringement; and (3) fail to identify and describe, in a clear and

13   consistent manner, the accused "analysis rule," "diagnostic record," "link pointer," "a pointer

14   in said second window," and "second window."  (JS at 11:14-14:16; MicroStrategy's Supp.

15   Mem. at 2:8-7:17.)  The Court finds the vague infringement contentions in DSC's updated

16   PICs are unacceptable and, "[t]o the extent defendants are given vague infringement

17   contentions, they are hampered in their ability to prepare their defense." *Am. Video Graphics,*

18   *L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005). Further, as a company whose

19   sole business is to enforce its patents,[5] the Court finds DSC's failure to provide PICs that

20   explain how MicroStrategy's source code infringes on the claims of DSC's '590 Patent is

21   without substantial justification, particularly when DSC and its software consultant have had

22   the benefit of reviewing the source code for nearly a full year, and especially after DSC has

23   represented that it would supplement its PICs to show how the source code for

24   MicroStrategy's accused products infringe upon the claims of its '590 Patent "following a

25

26   [5]    These types of companies are commonly known as "'patent trolls,' a term coined in
the technology industry to describe 'a small company who enforces patent rights against
27   accused infringers in an attempt to collect licensing fees, but does not manufacture products
or supply services based upon the patents in question.'" *InternetAd Systems, LLC v. Opodo,*
28   *Ltd.*, 481 F. Supp. 2d 596, 601 (N.D. Tex. 2007).

1    reasonable period of time to review MicroStrategy's source code." (JS at 9:13-16.)  Eleven

2    months is more than a reasonable period of time.  *See Am. Video*, 359 F. Supp. 2d at 561

3    (ordering plaintiff to supplement its claim charts with specific references to defendant's

4    source codes within 30 days of the date defendant deposited its source code into escrow.)

5    The following statement, which DSC made in its portion of the 7/9/07 Joint Case

6    Management Report ("Joint Report"), also removes any doubt that the time has come for DSC

7    to serve amended PICs that set forth the information MicroStrategy seeks by way of its

8    pending Motion:

9        In patent infringement actions such as this where the accused products are

10       software products, courts routinely allow plaintiffs a sufficient opportunity to

11       review source code before requiring an identification of specific infringing

12       products and the manner by which they infringe.  Courts recognize that plaintiffs

13       are limited in their ability to prepare preliminary infringement contentions on

14       accused products in software cases, where necessary source code is solely in the

15       possession of the defendants.  For example, in districts that require the early

16       filing of preliminary infringement contentions, courts require the defendants to

17       produce source code for all accused products, including those contained in

18       amended infringement contentions, prior to requiring amendment of the

19       infringement contentions.[] Even in the Eastern District of Texas' patent 'rocket

20       docket,' courts have recognized that, in software cases, 'a plaintiff's preparation

21       [of Preliminary Infringement Contentions] is restricted by defendants' sole

22       possession of the information that plaintiff needs.'[]  Accordingly, the plaintiff

23       is permitted to supplement its initial contentions following the defendants'

24       production of source code: 'plaintiffs usually only have access to the

25       manifestation of the defendants' allegedly infringing source code and not the

26       code itself . . . [and that] until plaintiffs have access to it, plaintiffs are typically

27       unable to give highly specified infringement contentions.'[]  Such is the case

28       here. *Until Defendants have produced their respective source code and afforded*

Page 8

1      *Plaintiff a reasonable period of time to inspect it, Defendants cannot*

2      *legitimately complain about Plaintiff's lack of specificity in its infringement*

3      *contentions.*

4  (Joint Report at 3:12-4:8 (emphasis added and  footnotes to case citations omitted).)

5        The bottom line is that, after a plaintiff-patentee has had a reasonable opportunity to

6  review the source code for the defendant's accused software product, the patentee's time for

7  trolling the proverbial waters for a theory of infringement comes to an end, and the patentee

8  must fish or cut bait with respect to its specific theory of infringement by providing PICs to

9  the defendant that clearly identify and explain how the source code for the accused product

10  infringes upon specific claims for the patent-in-suit.  For DSC, trolling time is over.

11        DSC principally opposes MicroStrategy's Motion on two grounds.  The Court finds

12  neither of the grounds have merit.

13        First, DSC contends that "MicroStrategy inappropriately seeks to invade the work-

14  product privilege that protects DSC's consulting experts' opinions from inadvertent or

15  unintentional disclosure." (JS at 16:2-19.)  This contention is frivolous and misleading

16  because MicroStrategy is not asking DSC to disclose its expert's opinions. Rather,

17  MicroStrategy is merely asking DSC to provide PICs that specifically describe or explain its

18  theory of infringement and, specifically, how the source code for its accused products, and

19  other aspects of its accused products, purport to infringe upon the claims for DSC's '590

20  Patent so that MicroStrategy can properly evaluate its defense.

21        Second, DSC contends it cannot provide detailed PICs because its software consultant,

22  Judy Etchinson, has been unable to complete her review of MicroStrategy's source code, and

23  that she will not be able to do so until DSC takes MicroStrategy's Rule 30(b)(6) deposition.

24  (JS at 16:1-23:5.)  In support of this contention, DSC proffers a declaration from Etchinson,

25  who claims she is a professor of Computer Science at Southern Methodist University, and that

26  she and her colleague have each "spent hundreds of hours" reviewing MicroStrategy source

27  code since mid-2008. (Etchinson Decl. (dkt. # 609),  ¶¶ 1-2.)  Despite having collectively

28  spent at least 400 hours of time analyzing MicroStrategy's source code and finding various

1    sections or modules of code that may meet the claims of DSC's '590 Patent "as she

2    understands them," Etchinson maintains she is still unable to complete her review and render

3    an opinion that would enable DSC to prepare an updated infringement chart until

4    MicroStrategy provides a Rule 30(b)(6) deposition.  (*Id.*, ¶¶ 4-11.)  Etchinson claims her

5    efforts have been hampered by what she refers to as "spyware" and her inability to determine

6    if MicroStrategy has made a complete production of its code and its programmer notes. (*Id.*)

7    The Court finds Etchinson's statements are dubious and not convincing.  Aside from being

8    vague, conclusory, or speculative, her statements provide little, if any, specific detail that

9    actually demonstrates how she can still remain largely clueless after spending hundreds of

10   hours reviewing the source code for MicroStrategy's accused software products, none of

11   which come close to software like Microsoft's Vista with an estimated 50 million plus lines

12   of source code.  Her assertion of being hampered by the so-called spyware is not only vague

13   and conclusory, but disingenuous given its timing -- nearly a year after she and her colleague

14   have already spent hundreds of hours reviewing the source code.  In short, Etchinson's obtuse

15   statements do not refute MicroStrategy's moving contentions and tend to shed light on her

16   competency and credibility as a software consultant.

17   Accordingly, to the extent MicroStrategy seeks to compel DSC to provide

18   supplemental PICs as a further response to interrogatory no. 3 as opposed to seeking to

19   enforce the self-executing sanction pursuant to Rule 37(c)(1), MicroStrategy's Motion is

20   GRANTED IN PART AS FOLLOWS: within fifteen calendar days of this Order and in any

21   event before MicroStrategy is to appear for a Rule 30(b)(6) deposition, DSC is directed to

22   serve a supplemental answer to interrogatory no. 3 that includes amended PICs. The amended

23   PICs shall supersede the PICs and updated PICs, and must set forth DSC's theory of

24   infringement by: (1) expressly identifying and describing what, if any,  source code for

25   MicroStrategy's accused software products infringe upon claims 1, 2, 4, 5, and 6 of DSC's

26   '590 Patent; (2) identifying and describing, in a clear and consistent manner, what, if any, of

27   MicroStrategy's specific accused software product or products constitute an accused "first

28   program" and accused "second program" and, with respect to each accused software product,

1  DSC must identify how each accused product's functionality contributes to infringement; (3)

2  identifying and describing, in a clear and consistent manner, the accused "analysis rule,"

3  "diagnostic record," "link pointer," "a pointer in said second window," and "second window."

4  To the extent DSC believes its current updated PICs are adequate as is, then it does not have

5  to do anything.  However, DSC is warned that, if it elects to stand on its updated PICs and it

6  forces MicroStrategy to defend itself during its Rule 30(b)(6) deposition based upon these

7  updated PICs, then DSC will not be allowed to redepose MicroStrategy if its designee is

8  unable to respond to a question due to DSC's failure to provide amended PICs with the

9  above-ordered information; nor will DSC be allowed to use any of MicroStrategy's source

10  code as evidence in support of its claims or to refute any of MicroStrategy's defenses in any

11  pre-trial motion or at trial unless Judge Carter expressly rules to the contrary.  Although it is

12  a close call, MicroStrategy's request for monetary sanctions is denied.

13

14

15  DATED: June 5, 2009                               /s/ Arthur Nakazato
                                                      ARTHUR NAKAZATO
16                                          UNITED STATES MAGISTRATE JUDGE

17  cc:  Judge Carter

18

19

20

21

22

23

24

25

26

27

28