O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Diagnostic Systems Corp.,** ) <br> ) <br>       **Plaintiff(s),** ) <br> ) <br>       v. ) <br> ) <br> **Symantec Corporation, et al.,** ) <br> ) <br>       **Defendant(s).** ) <br> ) <br> _____ ) | **CASE NO. SACV 06-1211 DOC (ANx)** <br><br> **O R D E R GRANTING MOTION TO STRIKE DIAGNOSTIC SYSTEMS CORPORATION'S PROPOSED "UPDATED CLAIM CHARTS"** |

Before the Court is Defendant and Counterclaimant Oracle Corporation ("Oracle")'s Motion to Strike Diagnostic Systems Corporation's Proposed "Updated Claim Charts" (the "Motion"). After considering the moving, opposing, and replying papers, as well as the parties' oral argument, the Court GRANTS the Motion.

**I.    Background**

The factual issues central to the instant Motion in large part concern the discovery process and Plaintiff Diagnostic Systems Corporation ("DSC")'s management of documents and data received from Oracle. On December 14, 2006 DSC filed suit against six Defendants alleging

1  patent infringement. On November 8, 2007, DSC filed a Consolidated First Amended
2  Complaint ("FAC") which named seventeen total Defendants, including (for the first time)
3  Oracle. The fact discovery period expired on October 13, 2009, opening expert reports were due
4  November 4, 2009, rebuttal expert reports were due November 27, 2009, and the expert
5  discovery cutoff is set for December 7, 2009.

6  The Court held a scheduling conference in this matter on July 23, 2007 and instructed
7  DSC to serve its preliminary infringement contentions (PICs), which DSC did on November 13,
8  2007. By its Complaint and PICs, DSC alleged in relevant part that various Oracle products
9  infringed on United States Patent No. 5,537,590 (the '590 patent) and United States Patent No.
10 5,701,400 (the '400 patent). In general terms, the Court instructed DSC that modifications to its
11 PICs would "take place only with court approval" and that DSC would not be permitted to "just
12 come into court and, as a matter of right, file an amended document."

13 In response to DSC's discovery requests, Oracle produced documents, products, and data
14 on March 26, 2008 (three million pages of documents), May 15, 2008 (working versions of
15 products), January 23, 2009 (laptop containing source code into an escrow facility). According
16 to DSC, Oracle was tardy in its production of some (if not all) of this information, including the
17 source code and programming language. On June 5, 2009, Magistrate Judge Arthur Nakazato
18 granted Defendant Microstrategy's motion for an order compelling DSC to produce a more
19 definite infringement statement *over DSC's opposition*. The Order was restricted to DSC's
20 infringement allegations against Microstrategy. Nonetheless, on August 5, 2009, DSC emailed
21 Oracle documents entitled "updated claim charts" that purported to amend DSC's PICs to
22 Oracle. The updated claim charts add a new Oracle product and amend DSC's claims with
23 respect to Oracle products already named in the PICs.

24 **II.   Discussion**

25 By the instant Motion, Oracle argues that the "updated claim charts" are untimely,
26 submitted without good cause, prejudicial to Oracle's presentation of its defense, and therefore
27 should be stricken. In Opposition, DSC argues that the "updated claim charts" were prompted
28 by Oracle's late production of documents, as well as the difficulty DSC encountered in

1  reviewing the source code Oracle made available in January 2009.  Moreover, DSC argues that
2  the amendments in its claim charts, which it has since scaled back (by choosing not to pursue its
3  allegations with respect to Oracle Business Activity Monitoring) pose little prejudice to, and
4  may even benefit, Oracle.

     As Judge Nakazato has recognized, amendments to PICs are considered disclosures under Federal Rule of Civil Procedure 26(e)(1).  Dkt. 672 at 5.  In his Order compelling DSC to narrow its infringement theory, Judge Nakazato acknowledged that the early production of PICs "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *Id.* at 6 (citing *Integrated Circuit Systems, Inc. v. Realtek Semiconductor Co., Ltd.*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004)).  Admittedly, *Integrated* applied Local Rules of the Northern District of California, which this Court has expressly declined to apply wholesale.  However, Judge Nakazato's Order was not merely premised upon the application of another district's Local Rules.  To the contrary, he considered prompt amendment necessary in order to avoid the prejudice to a defendant that results from the late disclosure of infringement theories:

> The bottom line is that, after a plaintiff-patentee has had a reasonable opportunity to review the source code for the defendant's accused software product, the patentee's time for trolling the proverbial waters for a theory of infringement comes to an end, and the patentee must cut bait with respect to its theory of infringement by providing PICs to the defendant that clearly identify and explain how the source code for the accused product infringes upon specific claims for the patent-in-suit.  For DSC, trolling time is over.

Dkt. 672 at 9.

     DSC now attempts to use Judge Nakazato's Order to justify its decision to amend the PICs with respect to Oracle.  More specifically, DSC argues that Judge Nakazato's Order required DSC's compliance within fifteen days so that Microstrategy's 30(b)(6) designee had adequate time to review DSC's final and most complete set of infringement contentions.  Thus,

3

1   DSC expects that Judge Nakazato's Order countenances the late production of DSC's updated
2   claim charts to Oracle, because Oracle did not produce its first witness for deposition until
3   September 29, 2009.  DSC delivered updated claim charts to Oracle on August 5, 2009.
4        DSC betrays the spirit of Judge Nakazato's Order.  As an initial matter, DSC opposed the
5   relief issued by Judge Nakazato.  DSC never intended to clarify its infringement contentions – it
6   was forced to do so.  And Judge Nakazato's Order was concerned with the exact scenario
7   presented by the instant Motion: that DSC would continue to manufacture new infringement
8   theories after discovering that its prior theories are unworkable.  Even if DSC was only made
9   aware by Judge Nakazato's Order that it needed to crystallize its infringement theories, it is
10  inexplicable that DSC neglected to seek leave of Court in light of that Order.
11       Moreover, *even prior to Judge Nakazato's Order*, DSC had issued claim charts with
12  respect to Oracle products.  The updated claim charts at issue do not supplement or clarify
13  DSC's allegations; they simply substitute in new products that DSC could have and should have
14  discovered earlier.  DSC received working versions of Oracle's products in May of 2008,
15  including the new products mentioned in Oracle's updated claim charts.  The source code for
16  these products was delivered in January of 2009.  Even if DSC was delayed by no fault of its
17  own in its review of the source code, DSC's expert witness concedes that "[t]he matters
18  addressed" in the updated claim charts "can be ascertained either from the working product or
19  publicly available information."  *See* Declaration of Judy Etchison ¶ 5.  This Court has reviewed
20  the expert report submitted by Ms. Etchison and does not disagree that DSC's review of Oracle's
21  source code helped it prepare the updated claim charts at issue.  However, DSC should not
22  benefit from its slow review of Oracle's source code and inject new infringement contentions
23  into this lawsuit on the eve of the due date for expert disclosures.  *See Network Appliance Inc. v.*
24  *Sun Microsystems Inc.*, Nos. C-07-06053 EDL, C-07-05488 EDL, 2009 WL 2761924, *1 (N.D.
25  Cal. Aug. 31, 2009); *see also O2 Micro Int'l v. Monolithic Power Sys.*, 467 F.3d 1355, 1363
26  (Fed. Cir. 2006) (discussing diligence obligations).
27       On June 5 of this year, Judge Nakazato tried to pin down DSC's infringement theories
28  with respect to Microstrategy.  DSC was provided fifteen days to crystallize its claims.  Nearly

4

two months later, DSC submitted updated claim charts to Oracle, only two months before the expiration of the fact discovery period, more than one year after DSC received working versions of Oracle's products, and more than six months after DSC received Oracle's source code. Not once during this time frame did DSC alert the Court to the potential for new infringement theories, seek leave to modify the scheduling order, or seek leave to amend its infringement theories.

### III. Disposition

For the foregoing reasons, the Court GRANTS Oracle's Motion and STRIKES DSC's updated claim charts.

IT IS SO ORDERED.

DATED: December 15, 2009

*/s/ David O. Carter*
DAVID O. CARTER
United States District Judge